IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
JANICE R. LANE,                     )
                                    )
            Plaintiff,              )
                                    )
    v.                              )      1:11CV474
                                    )
CAROLYN W. COLVIN,                  )
Acting Commissioner of Social       )
Security,¹                          )
                                    )
            Defendant.              )
```

## **MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Plaintiff, Janice R. Lane, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Complaint (Doc. 1).) Now before the court is Plaintiff's motion seeking a reversal of Defendant's decision and an order directing an award of benefits.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

(Pl.'s Mot. for J. on the Pleadings (Doc. 8).) In the alternative, Plaintiff's motion requests that the court remand the case for a hearing de novo before an administrative law judge ("ALJ"). (Id.) In response, Defendant filed a motion for remand, maintaining that the case requires further fact-finding regarding Plaintiff's intellectual functioning. (Def.'s Mot. for Remand (Doc. 10).) Defendant opposes Plaintiff's request for an order directing the payment of benefits, arguing that such an order would require the court to engage in impermissible fact-finding. (Def.'s Mem. in Supp. of Mot. for Remand (Doc. 11) at 2-4.) For the reasons that follow, the court will remand the case for a hearing de novo.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB in March of 2007, alleging an onset of disability in September of 2005. (Tr. 99-103.) After denials initially and upon reconsideration (Tr. 63, 64, 65-68, 69-72), an ALJ concluded, after a hearing, that Plaintiff suffered from severe degenerative disease of the lumbar spine, asthma, hypertension, obstructive sleep apnea, restless leg syndrome, obesity, and decreased intellectual functioning, but that none of those impairments matched the severity of any of the conditions covered in the Commissioner's listing of impairments, 20 C.F.R. pt. 404,

subpt. P, app. 1 (Tr. 25-29).[2]  Of particular relevance to the issues before the court, the ALJ found that Plaintiff's decreased intellectual functioning did not meet the criteria of Listing 12.05, 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05, which governs mental retardation.[3]  (Tr. 27-28.)  The ALJ next concluded that Plaintiff's residual functional capacity for a range of light work prevented her from performing her prior work as a child care monitor.  (Id. at 29-31.)  Turning to the Commissioner's Medical-Vocational

---

[2] The listing of impairments "describes for each of the major body systems impairments that [the Commissioner] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a).  Each listed impairment "specif[ies] the objective medical and other findings needed to satisfy the criteria of that listing."  20 C.F.R. § 404.1525(c)(3).  The Commissioner will find that an impairment "meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement."  Id.

[3] Effective September 3, 2013, the title of this Listing was changed to "Intellectual Disability."  See 78 Fed. Reg. 46,499 (August 1, 2013); Kennedy v. Colvin, 738 F.3d 1172, 1175 n.1 (9th Cir. 2013) (noting the change in name but recognizing that "[t]he substance of the listing has not changed").  However, because the ALJ's decision regarding Listing 12.05 predated this change, the court will refer to this Listing under its prior title, "Mental Retardation."

Guidelines ("Grids"),[4] the ALJ relied upon Rule 202.13 to find that Plaintiff had not been disabled at any time from her onset date to the day prior to her 55th birthday, July 6, 2009. (Tr. 32.) The ALJ noted that on July 7, 2009, Plaintiff attained 55 years of age, categorized by the regulations as "advanced age," 20 C.F.R. § 404.1563(e), and relied upon Rule 202.04 to conclude that Plaintiff was "disabled" beginning on July 7, 2009. (Id.)

## STANDARD OF REVIEW

In cases such as this one, where the matter was previously adjudicated by an ALJ, review of the ALJ's ruling is limited to the following two issues: (1) whether substantial evidence supports the ALJ's decision; and (2) whether the ALJ applied the correct legal standards. See 42 U.S.C. § 405(g) (2010); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The question is not whether Plaintiff

---

[4] The Medical-Vocational Guidelines apply at the final step in the disability evaluation process, where an individual's severe impairments, while not of listing level severity, prevent the performance of any past relevant work. 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a). Each guideline (or "rule") takes into account the individual's age, education, prior work experience and residual functional capacity to direct a conclusion of "disabled" or "not disabled." Id. In promulgating the rules, the Commissioner took administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various exertional levels (i.e., sedentary, light, etc.). 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(b). Thus, where an individual's age, education, prior work experience and residual functional capacity coincide entirely with a specific rule, the Commissioner may rely upon that rule to direct a conclusion of disability or non-disability. 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a).

is disabled, but whether the ALJ's finding that Plaintiff is not disabled is supported by substantial evidence and based upon a correct application of the relevant law.  See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  If a reasonable mind might accept as adequate the evidence in support of the ALJ's decision, the court should not reweigh the evidence or substitute its judgment for that of the ALJ. Hays, 907 F.2d at 1456.

## DISCUSSION

### I. Plaintiff's Educational Abilities and the Applicability of the Grids[5]

Plaintiff contends that the ALJ erred in finding that she possessed "at least a high school education" and, in turn, in relying upon Rule 202.13 of the Grids (which is predicated upon a attainment of at least a high school education) to direct a conclusion of "not disabled" prior to July 7, 2009.  (Pl.'s Br. (Doc. 9) at 5 (quoting Tr. 31).)  According to Plaintiff, an ALJ may rely on a numerical grade level to determine a claimant's educational ability "only if contradictory evidence does not exist."  (Id. (citing 20 C.F.R. § 404.1564(b), Boone v. Sec'y of Health & Human Servs., 595 F. Supp. 758, 759 (E.D. Mich. 1984), and Social Security Ruling 83-11, Titles

---

[5] Plaintiff's first and second assignments of error are sufficiently inter-related that the court will discuss them together as one issue.

II and XVI: Capability To Do Other Work — The Exertionally Based Medical-Vocational Rules Met</u>, 1983 WL 31252, at *2 ("SSR 83-11")).) Plaintiff then catalogs record evidence that she claims demonstrates that she is "functionally illiterate." (Pl.'s Br. (Doc. 9) at 6-8.) Plaintiff urges that, had the ALJ found her "functionally illiterate," the ALJ would have applied Rule 202.09 to direct a conclusion of "disabled." Plaintiff asserts that the ALJ's failure in this regard constitutes reversible error warranting an award of benefits. (<u>Id.</u> at 9-10.)

Plaintiff's argument fails for the simple reason that the evidence is far from clear that she is "functionally illiterate." The Commissioner's regulations provide that a claimant is considered illiterate if he or she "cannot read or write a simple message . . . even though the person can sign his or her name." 20 C.F.R. § 404.1564(b)(1). Moreover, in general, the regulations assume that "an illiterate person has had little or no formal schooling." <u>Id.</u> Here, the evidence conflicts sharply not only as to Plaintiff's ability to read and write, but also as to her level of formal schooling. On one hand, Plaintiff testified that she attended school "<u>through</u> the twelfth grade" (Tr. 40 (emphasis added)), indicated on a disability report that she did <u>not</u> attend special education classes (Tr. 143), and described the duties of her prior work as a certified nursing assistant ("CNA") as, among other tasks,

giving medications, taking vital signs and updating charts (Tr. 138), all of which is flatly inconsistent with a status as an illiterate individual. Furthermore, a consultative examiner concluded that Plaintiff was a "well-adjusted [] high school graduate" who could "read and write full sentences." (Tr. 232, 234.) On the other hand, Plaintiff testified that she can only write "a little," has "trouble reading hard words," cannot "spell" or "make a grocery list," and in direct contradiction to her disability report, did not complete any reports as a CNA. (Tr. 40, 41.) Moreover, Plaintiff indicated on a disability report that the highest grade in school that she completed was eleventh rather than twelfth grade (Tr. 143), and the consultative examiner did note "intellectual inefficiency" that was "fairly conspicuous" during his brief examination. (Tr. 234.) In light of these conflicts in the record evidence, the court cannot determine whether the ALJ's determination that Plaintiff has "at least a high school education" (Tr. 31) is supported by substantial evidence, nor does the court find the evidence clear that Plaintiff is "functionally illiterate," as she urges. The court agrees with Defendant that a reversal and order for an award of benefits would require the court to engage in impermissible fact-finding regarding Plaintiff's literacy and educational level, and thus, that a remand for a new hearing to address these issues further is the appropriate relief in this matter.

**II. Listing 12.05C**

Plaintiff next argues that the ALJ erred by not finding that her decreased intellectual functioning met the criteria of Listing 12.05C. (Pl.'s Br. (Doc. 9) at 10-14.) Specifically, Plaintiff points to a Stanford-Binet IQ test administered in 1967 which yielded a score of 66, deficits in adaptive functioning which manifested prior to age 22 (including participation in special education classes and difficulty with reading, writing and arithmetic), and other impairments imposing additional and significant work-related limitations, as evidence that her decreased intellectual functioning meets all of the requirements of Listing 12.05C. (Id.) Plaintiff contends that her ability to satisfy the criteria of Listing 12.05C constitutes "a separate basis for the court to reverse the final decision of the Commissioner and remand the claim for an award of benefits." (Id. at 14.)

Plaintiff's argument does not demonstrate her entitlement to an immediate award of benefits, because the IQ test upon which Plaintiff relies is insufficient in two respects to establish listing-level severity. First, as correctly noted by the ALJ, the Stanford-Binet Intelligence Scale, Form L-M (1960 rev.) does not constitute the type of IQ test "contemplated in listing 12.05." (Tr. 27.) As recognized in the introduction to the mental listings, the IQ scores in the listings reflect values from IQ tests that have a

mean of 100 and a standard deviation of 15 such as the Wechsler series. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00D(6)(c). In fact, the Commissioner's Program Operations Manual System ("POMS") further provides that "[t]he Stanford-Binet IV is preferred over the earlier LM edition because of the updated and enlarged normative sample." POMS § DI 24515.055A. POMS further explains that "IQ results of tests with parameters other than [means of 100 and standard deviations of 15] would obviously require special transformation in order to render them comparable to the requirements stated in the Listings." Id. Second, Plaintiff's Stanford-Binet IQ test was administered in 1967 when Plaintiff was 12 years old. (Tr. 186-93.) Under the regulations, IQ scores obtained between the ages of 7 and 16 remain current for only two years when the IQ score is 40 or higher. 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00D(10). Both the regulations and POMS recognize that IQ test results "tend to stabilize by the age of 16." Id.; POMS § DI 24515.055A. Because Listing 12.05C requires a reliable and valid IQ score in the 60 to 70 range, this case must be remanded for a new hearing before an ALJ. In conjunction with this remand, the ALJ shall order a current IQ test for Plaintiff which complies with the requirements of the

listings, and shall include an evaluation of the test's results in his or her decision.[6]

## CONCLUSION

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability from September 1, 2005 to July 6, 2009 is **REVERSED,** that Plaintiff's Motion for Judgment Reversing Judgment of the Commissioner or Remanding the Cause for Rehearing (Doc. 8) is **GRANTED IN PART** as to Plaintiff's request for a remand for further proceedings and **DENIED IN PART** as to Plaintiff's request for an order awarding benefits, that Defendant's Motion for Remand Under Sentence Four of 42 U.S.C. § 405(g) (Doc. 10) is **GRANTED,** and that this action is remanded for further administrative proceedings which shall include (1) reconsideration of Plaintiff's educational level; (2) administration of a current IQ test; and (3) a specific discussion of whether Plaintiff's decreased intellectual functioning meets or equals the criteria of any of the listed impairments in light of the new IQ test and any subsequent testimony and evidence.

---

[6] The court acknowledges that Plaintiff's attorney offered to have Plaintiff tested anew to demonstrate her illiteracy (albeit not specifically her IQ), and that the ALJ apparently did not opt to order such testing. (Tr. 61.)

This the 16th day of June, 2014.

```
                          _____
                                United States District Judge
```